**No. 2015-1468**

# In The United States Court of Appeals For The Federal Circuit

BIOMET ORTHOPEDICS, LLC,
BIOMET MANUFACTURING CORPORATION,

*Appellants,*

v.

PUGET BIOVENTURES, LLC,
FORMERLY HUDSON SURGICAL DESIGN, INC.

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. 95/001,469

## RESPONSE BRIEF OF APPELLEE

Brad D. Pedersen, Esq.
Chad J. Wickman, Esq.
PATTERSON THUENTE PEDERSEN, P.A.
80 South Eighth Street, Suite 4800
Minneapolis, MN 55402
Tel: (612) 349-5740

*Attorneys for Appellee*
*Puget Bioventures, LLC*

**Dated: July 1, 2015**

2015 – BACHMAN LEGAL PRINTING – FAX (612) 337-8053 – PHONE (612) 339-9518 or 1-800-715-3582

## CERTIFICATE OF INTEREST

Counsel for the Appellee certifies the following:

1. The full names of every party or amicus represented by me are: Puget BioVentures, LLC ("Patent Owner"), successor in interest to Hudson Surgical Design, Inc. ("Hudson").

2. The name of the real party in interest represented if the party named in the caption is not the real party in interest: None

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: Brad D. Pedersen and Chad J. Wickman from Patterson Thuente Pedersen, P.A.

July 1, 2015

/s/ Brad Pedersen

Brad D. Pedersen
PATTERSON THUENTE PEDERSEN, P.A.
80 South Eighth Street, Suite 4800
Minneapolis, MN 55402
Telephone: 612-349-5740
Facsimile: 612-349-9266

*Counsel for Appellee*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i
TABLE OF CONTENTS ........ ii
TABLE OF AUTHORITIES ........ v
STATEMENT OF RELATED CASES ........ vii
STATEMENT OF JURISDICTION ........ 1
COUNTERSTATEMENT OF THE ISSUES ........ 1
COUNTERSTATEMENT OF THE CASE ........ 2
A. The '541 Patent and Claims at Issue ........ 2
B. Reexamination Proceeding ........ 4
C. Overview of the Prior Art ........ 8
1. Samuelson ........ 8
2. Biomet ........ 10
3. Protek ........ 11
SUMMARY OF THE ARGUMENT ........ 12
ARGUMENT ........ 13
I. MOTION TO STRIKE NEW EVIDENCE AND ARGUMENT PRESENTED BY REQUESTER FOR THE FIRST TIME ON THIS APPEAL ........ 13
II. COUNTERSTATEMENT OF STANDARD OF REVIEW ........ 18
III. THE CLAIM CONSTRUCTIONS ARGUED BY REQUESTER ARE WRONG ........ 20
A. Broadest Reasonable Construction is the Wrong Construction Standard for an Expired Patent ........ 20
B. Even If Broadest Reasonable Construction Were Proper, Requester's Arguments are not "Reasonable" ........ 23

III. THE BOARD PROPERLY DETERMINED THAT THE ALLOWED CLAIMS REQUIRE CUTTING ACROSS THE FEMUR AND/OR TIBIA FROM ONE SIDE OF THE KNEE TO THE OTHER ............. 25

A. The Board properly determined that Unamended Claims 35-38 and 49-52 require cutting across the knee from a guide positioned on an opposite side ....................................................... 25

1. Requester's arguments on "including at least" are irrelevant because the dependent claims further restrict the original independent claim language ......................................................... 26

2. Requester's arguments on "generally medially" and "both medially and laterally" don't consider the added limitations in the dependent claims ............................................................... 28

B. The Board properly determined that Amended Claims 31, 33, 45 and 47 require cutting across the knee from a guide positioned on an opposite side ........................................................................ 31

1. Allegedly open ended nature of the "slot" in the original independent claims is irrelevant because of the further limitation added by the dependent claims .................................... 32

2. Requester's arguments on "resected surface on both a medial portion or a lateral portion" ignore the plain language of the dependent claims ...................................................................... 33

C. The Board properly determined that Amended Claims 39, 40, 53 and 54 require cutting across the knee from a guide positioned on an opposite side ........................................................................ 35

IV. THE PRIOR ART DOES NOT DISCLOSE CUTTING ACROSS THE FEMUR OR TIBIA FROM ONE SIDE OF THE KNEE TO THE OTHER SIDE AS CLAIMED ............................................................ 37

A. Substantial evidence supports the Board's factual finding that there is no teaching in Samuelson of cutting across the femur or tibia from one side to the other .................................................. 38

B. Substantial evidence supports the Board's factual finding that there is no teaching in Protek of cutting across from one side of the tibia or femur to the other ..................................................... 41

C. Substantial evidence supports the Board's factual finding that there is no teaching in Biomet of cutting across from one side of the tibia or femur to the other ..................................................... 43

D. Because neither Samuelson nor Protek teach cutting across the bone the claims cannot be obvious over the combination ............... 44

VI. AMENDED CLAIMS 31, 33, 39-40, 45, 47, 53 AND 54 SHOULD BE ISSUED FOLLOWING AFFIRMANCE OF THE BOARD'S DECISIONS ........................................................................................ 45

VII. CONCLUSION ........................................................................... 48

CERTIFICATE OF COMPLIANCE ............................................................ 49

CERTIFICATE OF SERVICE ..................................................................... 50

## TABLE OF AUTHORITIES

**Cases con't** **Page(s)**

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ........ 20

*Estee Lauder, Inc. v. L'Oreal, S.A.,* 129 F.3d 588 (Fed. Cir. 1997) ........ 37

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U. S. 605 (1950) ........ 18

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) ........ 19

*Institut Pasteur v. Focarino*, 738 F.3d 1337 (Fed. Cir. 2014) ........ 46

*In re Cortright*, 165 F.3d 1353 (Fed. Cir. 1999) ........ 24

*In re Gleave*, 560 F.3d 1331 (Fed. Cir. 2009) ........ 20

*In re Jolley*, 308 F.3d 1317 (Fed. Cir. 2002) ........ 20

*In re NTP, Inc.*, 654 F.3d 1279 (Fed. Cir. 2011) ........ 24

*In re Rambus, Inc.*, 694 F.3d 42 (Fed. Cir. 2012) ........ 19-20

*In re Suitco Surface, Inc.*, 603 F.3d 1255 (Fed. Cir. 2010) ........ 24

*In re Watts*, 354 F.3d 1362 (Fed. Cir. 2004) ........ 14, 17

*In re Wilson*, 424 F.2d 1382 (CCPA 1970) ........ 28

*Kennametal, Inc. v. Ingersoll Cutting Tool Company*, 780 F.3d. 1376 (Fed. Cir. 2015) ........ 19

*Microsoft Corp. v. Proxyconn, Inc.*, No. 14-1542, -1543 (Fed. Cir. June 16, 2015) ........ 24

*Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561 (Fed. Cir. 1987) ........ 27-28

*Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc.*, 73 F.3d 1085 (Fed. Cir. 1995) ........ 19

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ........ 18-19, 21

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015) ........ 18

**Statutes and Rules**

37 C.F.R. § 1.75(c) ........................................................................................27

**Other Authorities**

MPEP § 2258 I.G ........................................................................................18

**STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Rule 47.5(a), there have been no other appeals before this or any other appellate court in or from this same proceeding between Patent Owner and Appellant, Biomet Orthopedics, LLC and Biomet Manufacturing Corporation ("Requester") before the United States Patent and Trademark Office ("USPTO").

Pursuant to Federal Circuit Rule 47.5(b), the following pending litigation cases involve U.S. Patent No. 7,344,541 (the "'541 Patent") at issue in this appeal and may be directly affected by this Court's decision:

*Hudson Surgical Design, Inc. v. Biomet Orthopedics, LLC and Biomet Manufacturing Corporation*, Case No. 3:10-CV-00465-PPS-CAN, District Court for the Northern District of Indiana (stayed pending final resolution of the reexamination of the '541 Patent);

*Hudson Surgical Design, Inc. v. Depuy Orthopaedics, Inc.*, Case No. 3:10-CV-00463-HD-CAN, District Court for the Northern District of Indiana (stayed pending final resolution of the reexamination of the '541 Patent); and

*Inter Partes* Reexamination (Control No. 95/002,152) of U.S. Patent No. 7,967,822, which is a continuation of the '541 Patent (on appeal to the Patent Trial and Appeal Board ("Board") at the USPTO).

## STATEMENT OF JURISDICTION

Patent Owner has no objection to the Statement of Jurisdiction by Requester.

## COUNTERSTATEMENT OF THE ISSUES

Patent Owner objects to Requester's Statement of the Issues, which is argumentative and misconstrues the issues before the Court. (Appellant Brief, p. 2). The issues before the Court are:

1. Whether the Board erred in its claim construction.

2. Whether substantial evidence supports the Board's factual findings regarding the teachings of the prior art references and the Board's decisions reversing the Examiner's rejections of claims 31, 33, 35-40, 45, 47 and 49-54 (the "Allowed Claims") over the prior art references.

3. Whether the amendments to the underlying independent claims of dependent claims 31, 33, 39-40, 45, 47, and 53-54 (the "Amended Claims") substantively change the scope of these claims such that the USPTO is precluded from entering the amendments to the underlying independent claims after the '541 Patent expires.

# COUNTERSTATEMENT OF THE CASE

Patent Owner objects to Requester's Preliminary Statement and Statement of the Case and Factual Background. (Appellant Brief, pp. 2-16). These sections of the Appellant Brief are replete with arguments and mischaracterizations of the claims and the prior art references, and omit key details regarding the factual findings by the Board with respect to the prior art references. Patent Owner is therefore setting forth its own Counterstatement of the Case that more accurately represents the facts relevant to the present appeal.

## A. The '541 Patent and Claims at Issue

The specification of the '541 Patent arises from a series of continuation-in-part applications filed from September 2, 1994 to May 17, 1996 describing a number of different inventions relating to implants, cutting tools, cutting guides and alignments guides that can be used in total knee arthroplasty procedures. The Allowed Claims of the '541 Patent relate to various ones of the alternate embodiments described in the specification that are particularly useful for a minimally invasive surgical technique for total knee arthroplasty procedures "when the patellar tendon, patella, or quad tendon interferes with placement of the cutting guide" in order to minimize interference. (A1104).

The Allowed Claims are directed to resection of the femur and/or tibia for placement of an implant on the resected surface through minimally invasive techniques with a cutting guide positioned along *only one* of the medial or lateral sides/compartments and a specifically limited portion of the anterior side of the femur/tibia for use in resecting both sides/compartments of the femur/tibia. (A3326; A1109, (emphasis added)).

FIG. 18




*Fig. 18 of the '541 Patent (A1072*)

This technique as shown, for example, in Fig. 18 of the '541 Patent, uses a half-width guide from either a medial or lateral approach to cut across the entire long bone of the knee and has been widely adopted and promoted in the last decade. (A3326). The half-width guide technique provides significant advantages due to its minimally invasive nature as it mitigates

trauma to the quad/patella tendon by avoiding excessive dissection and retraction that results from use of conventional prior art full-width dual sided cutting guides. (A3326).

Requester's Preliminary Statement presents an incorrect summary of the claims of the '541 Patent. Requester baldly attempts to argue similarities between the Allowed Claims and the 38 claims of the '541 Patent that were rejected by the Board's decisions (the "Rejected Claims"), but glosses over key distinctions between the Allowed Claims and the Rejected Claims that were specifically noted by the Board in reversing the rejections of the Allowed Claims. (Appellant Brief, pp. 3-4). Each of the Allowed Claims requires a specific cutting guide, placed on one side of the bone, to be used to cut into the other side of the bone, whereas the Board found that, under a broadest reasonable construction, the Rejected Claims allowed use of other guides positioned in other locations along the bone to complete the recited resection as is done in the prior art guides. (A9-11).

### B. Reexamination Proceeding

The characterization of the procedural sequence of events in the reexamination before the Examiner as described in the Appellant Brief is correct, but the characterization of the reasons for Patent Owner's amendments and the decisions of the Board is incorrect. (Appellant Brief,

p.5-6). The amendments submitted during reexamination were made solely for the purpose of clarifying the intended scope of the claims to accord the claim scope under a broadest reasonable interpretation with the claim scope under a construction as used by a district court. (A2727-2730).

Only three prior art references considered in the reexamination are relevant to this appeal: U.S. Patent No. 5,611,802 to Samuelson, *et al.* ("Samuelson") (A2171-88); Freeman-Samuelson Total Knee System, published by Biomet ("Biomet") (A2189-2247); and Protek F/S Modular Total Knee Replacement System, published by Protek ("Protek") (A2279-2336). The grounds of rejection on appeal include anticipation of the Allowed Claims by each of Samuelson, Biomet and Protek, and obviousness of the Allowed Claims over Samuelson in view of Protek. (A8-13).

The Board agreed with Requester by finding that the Rejected Claims of the '541 Patent included language that, under the Examiner's broadest reasonable interpretation construction, did not limit the claims to use of the one-sided, minimally invasive half-width guide of Figure 18 and could be read on by the full-width guides of the cited references. (A9-12). The Board found that other claims – the Allowed Claims (including rejections initially upheld but then reversed upon reconsideration) – were properly restricted to guides such as those depicted above in Figure 18 of the '541 Patent and

could not be construed to be read upon by the cited references. (A8-9). The fact that the Board maintained the rejections of some claims and reversed the rejections of others demonstrates that the Board fully understood, considered and dismissed – now twice – each of the contentions of Requester regarding the construction of the Allowed Claims and the teachings of the prior art. (A22-27). Specifically, the Board in its Decision on the Request for Reconsideration emphasized that:

> The Decision makes clear, by way of the affirmed rejections, that the [Rejected Claims] do not preclude additional guides or guide surfaces. It is only the language of the [Allowed Claims] subject to the reversed rejections that specifically requires using a single guide to cut into the other side.

(A23 (citation omitted)).

With respect to the additional dependent claims that constitute the Amended Claims that were the subject of the Patentee's Request for Reconsideration, the Board went on to hold that:

> Each of the [Amended Claims] recites language that conveys that the cut guide is used on one side of the bone to cut the other side as part of the resection in the same way that we determined was the case for [the Unamended Claims][1] in our original decision.

---

[1]Claims 35-38 and 49-52 are the dependent claims rewritten in independent format that are referred to by Requester as "the Unamended Claims." (Appellant Brief, p. 4). This passage includes an apparent typographical error by the Board in referring to these claims as "claims 35-38 and 40-52 in our original decision."

> Requester disagrees and asserts, for example, with respect to claim 31, its independent claim, claim 9, "only limits the position of 'the slot' such that 'at least a portion of **the slot**…fac[es] the end of the… femur ….'" Requester goes on to assert that claim 31 "does not mean that both a medial portion **and** a lateral portion of the knee be cut." We disagree. Claim 31 specifically recites "plunging the saw blade through *the slot* to create the resected surface on *both* a medial portion or a lateral portion" (emphasis added), i.e., this language cannot refer to other portions of the cutting guide as is the case with the independent claim, but requires the cut through both sides to be made through the same slot regardless of what other slots may be present as allowed by the broader claim 9.

(A24-25) (citations omitted, emphasis in original).

The Board further made express factual findings that none of the cited references teach cutting from one side of the bone into the opposite side as claimed in the Allowed Claims.

> [Requester] asserts that Samuelson specifically teaches using one swing arm to perform a resection, but we do not agree that the portion cited by Requester clearly states that this is the case. In referring to the question of the swing arms 200 and 200' we agree with Patent Owner that the description appears only to describe cutting the portion of the bone on the same side as the swing arm and subsequently using the opposite guide to cut the opposite side.

(A10 (citation omitted); *see also*, A13-14).

### C. Overview of the Prior Art

#### 1. Samuelson

Samuelson is directed to cutting guides that extend beyond the full width of the femur and tibia with wings extending posteriorally along both the medial and lateral sides of the bones and anterior cutting surfaces extending along the full width of the bones. (A2175-2178). The Appellant Brief inaccurately characterizes Samuelson as disclosing both two arm and one arm resection techniques, even though the Board made express factual findings that Samuelson does not disclose one arm resection. (A9-10). Requester is misrepresenting the teachings of Samuelson and the factual findings of the Board in attempting to assert that Samuelson teaches one arm resection.

Requester cites to a passage in Samuelson that describes using slot 370 during resection of the tibia as somehow describing one-sided only resection of the tibia. (Appellant Brief, pp. 10-11). The citation to the passage in isolation inaccurately portrays the teachings of Samuelson, as the entire description of the tibial cutting guide in Samuelson only discusses medially located structure because the patent expressly states that "it is again to be understood that discussion of the one will apply equally to the primed

component not discussed. (A2186). Moreover, the Board expressly found that this passage of Samuelson does not disclose one-sided cutting:

> In other words, Samuelson teaches a medial cutting guide to cut the medial side of the bone and a lateral cutting guide to cut the lateral side, but nowhere explicitly discloses a single guide placed on one side or the other and used to cut into the other side (i.e., from the lateral into the medial side or vice versa), for example as in claim 35.

(A9).

Requester additionally misrepresents that Samuelson teaches one-armed resection of the femur in contrast to the express findings of the Board, without even citing to any portion of the description of Samuelson. (Appellant Brief, pp. 10-11). As with the embodiments directed to resection of the tibia, however, the Board expressly found that Samuelson does not teach one arm resection of the femur:

> [Requester] asserts that Samuelson specifically teaches using one swing arm to perform a resection, but we do not agree that the portion cited by Requester clearly states that this is the case … the description appears only to describe cutting the portion of the bone on the same side as the using arm and subsequently using the opposite guide to cut the opposite side.

(A10).

Thus, Requester's representations that Samuelson teaches one arm resection methods as "factual background" in the Appellant Brief is disingenuous and ignores the factual findings made by the Board.

### 2. Biomet

Biomet also teaches full width cutting guides with medial and lateral wings and an anterior cutting surface extending the full width of the femur and tibia. (A2205, A2208).

Requester's summary of the distal femoral resection guide of Biomet in the Background section of the Appellant Brief contains numerous misrepresentations. Requester cites to a "spring loaded valgus arm" as being used to form a slot "together with a capture plate" that is used to resect the femur. (Appellant Brief, p. 13). This is incorrect because the "spring-loaded valgus arm" is an alignment mechanism used to set a desired valgus angle, not a cutting mechanism and "[t]he valgus arm can be removed with the thumbscrew" *prior* to using the cutting surfaces of the guide to resect the distal femur. (A2205). Biomet, in fact, discloses that the distal femoral cutting guide includes both medial and lateral cutting arms as well as an anterior cutting block and "[t]he distal femur is cut flush with the block and its ***arms***." (A2205 (emphasis added)). Thus, Biomet does not disclose use of its distal femoral cutting guide with only one cutting arm, but with both medially and laterally located cutting arms in addition to the anterior cutting block.

Although Biomet discloses that the tibial cutting guide can be used without "the cutting guide arm on the lateral side," the guide is "cut along the cut block," such that the tibial resection taught by Biomet is performed using *both* the medial cutting guide arm and the anterior guide surface extending along both medial and lateral portions of the anterior side of the bone, which further includes the undeployed lateral cutting arm. (A2208). Thus, Biomet discloses that the tibial resection is performed using both generally medially and generally laterally located guide surfaces.

**3. Protek**

Protek also teaches full width cutting guides with medial and lateral wings and an anterior cutting surface extending the full width of the femur and tibia. (A2297, A2301).

The statement by Requester in the Background section of the Appellant Brief that the femoral "guide enables resection of the distal femur using a saw blade from either the medial or lateral sides of the knee" is inaccurate and in no way supported by Protek. (Appellant Brief, p. 15). Rather, Protek expressly discloses that both the medially and laterally positioned arms as well as the anterior cutting block are used to resect the femur. (A2301 (step 5)).

Similar to the tibial cutting guide in Biomet, the tibial cutting guide in Protek is disclosed as being used without the lateral cutting guide arm, but Requester again glosses over the fact that the entire top surface of the guide including the anterior cutting block and undeployed lateral arm is used to complete the resection. (A2297). Thus, as with Biomet, the resection is completed using both generally medially and generally laterally located guide surfaces.

## **SUMMARY OF THE ARGUMENT**

Requester's appeal of the decisions of the Board relies upon impermissible new evidence and improper standards of review and claim constructions.

Requester admits the that the '541 Patent will expire prior to issuance of a reexamination certificate and therefore the proper standard under which the Allowed Claims should be construed is the *Phillips* standard, not broadest reasonable interpretation. However, a construction under the proper standard cannot include the construction argued by Requester, which would require the Allowed Claims to read on prior art expressly overcome during prosecution. Even under a broadest reasonable interpretation standard, Requester's construction goes far beyond any "reasonable"

interpretation by ignoring multiple fundamental rules of claim construction to arrive at what Requester acknowledges is an "admittedly bizarre" construction.

As properly found by the Board, each of the Allowed Claims requires a specific cutting guide, placed on one side of the bone, to be used to cut into the other side of the bone. Requester's arguments that the cited references teach these limitations rely on impermissible new evidence and attorney argument, which are insufficient to demonstrate that the Board's factual findings that the prior art references fail to teach cutting across the bone from one side to the other are not supported by substantial evidence.

# ARGUMENT

## I. MOTION TO STRIKE NEW EVIDENCE AND ARGUMENT PRESENTED BY REQUESTER FOR THE FIRST TIME ON THIS APPEAL

As a preliminary matter, Patent Owner is presenting in this brief its Motion to Strike New Evidence and Argument in the Appellant Brief pursuant to Federal Circuit Rule 27(e).

On appeal to this Court, there should be a comprehensive record of the arguments and evidence presented by the parties to the Board and the "review of the Board's decision is confined to the 'four corners' of that

record." *In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004). The party "challenging a decision [is] not permitted to raise arguments on appeal that were not presented to the Board." *Id.* This includes new arguments regarding what prior art documents do and do not teach as well as new claim construction arguments. *Id*. at 1368.

The Appellant Brief presents what amounts to new evidence in the form of multiple "modified" and "annotated" figures that are not found in the prior art references. For example, a figure purportedly from Samuelson is introduced on pages 35-36 of the Appellant Brief as follows:

> Claim 31's *cutting* step can be read on cutting only the medial side of the bone. Modified Figure 6A of Samuelson (A2175) below has both swing arms deployed (an allowed configuration for Claim 31), with the cutting guide positioned along both the medial and lateral sides. …




FIG-6A

(Appellant Brief, pp. 35-36).

This modified figure is introduced by attorney argument without any declaration or foundational support. Moreover, the attorney assertions made on page 35 of the Appellant Brief regarding both the scope of claim 31 of the '541 Patent and the teaching of Samuelson are directly contrary to the findings and holdings by the Board. (A24-26.).

Likewise, another figure characterized by Requester as depicting the "Samuelson One-Sided Cutting Approach" is introduced on pages 43-44 of the Appellant Brief without even a mention that this purported figure has been modified and annotated by counsel for Requester.




Figure 6A as depicted in Samuelson, however, actually only depicts the following:

FIG-6A




(A2175).

In each of these figures in the Appellant Brief, counsel for Requester has not only added a depiction of a tibia, and a saw blade and a cutting direction in the second figure, that are not shown in Fig. 6A of the reference itself, but also has doctored the figure to change the positioning of one or both of the swing arms 196 and 196' of the cutting guide from what is actually shown in the figure.

Similar attorney-modified and annotated versions of Fig. 6A of Samuelson appear at pages 45, 47, 49 and 51-52 of the Appellant Brief. Likewise, two attorney-modified and annotated versions of a figure from Protek appear at page 53 of the Appellant Brief and, two attorney-modified and annotated versions of a figure from Biomet appear at pages 54-55 of the Appellant Brief.

None of these attorney-modified figures and the accompanying annotations was ever introduced into the record before the Examiner by way of declaration testimony. Moreover, once a Notice of Appeal was filed in this *inter partes* reexamination, new evidence cannot be submitted other than under the provisions of 37 C.F.R. §§ 1.116 or 41.63, which did not occur.

Even assuming that these attorney-modified figures could be considered argument, not evidence, the specific attorney-modified figures used in the Appellant Brief were never presented to the Board.[2] (A2757-2804, A2856-2866, A2913-2969, A3166-3194, A3372-3403, A3421-3441, A3497-3509 and A3511-3525).

Because Requester failed to present this evidence and/or argument before the Board, the Court does not have the benefit of the Board's informed judgment on these matters for review. Accordingly, these portions of the Appellant Brief should be stricken and/or disregarded by the Court. *See, Watts*, 354 F.2d at 1368.

[2] Four different doctored versions of Figure 6A of Samuelson were presented in Requester's Opposition to Request for Rehearing, but none of those attorney-modified figures included the unsupported depiction of the saw blades or all of the annotations contained in the newly doctored figures appearing in the Appellant Brief. (A3515-16, 3520 and 3523). Because Patent Owner was not able to respond to that submission, Patent Owner was unable to object to the impermissible presentation of clearly modified prior art figures that are not found in the prior art document.

## II. COUNTERSTATEMENT OF STANDARD OF REVIEW

The standards of review proposed by Requester are wrong and incomplete. (Appellant Brief, p. 17).

Although claim construction is ultimately a legal conclusion that is reviewed *de novo*, any factual findings underlying a claim construction are to be given deference on appeal. *Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 135 S. Ct. 831, 841-42 (2015). "When reviewing a district court's resolution of subsidiary factual matters made in the course of its construction of a patent claim, the Federal Circuit must apply a 'clear error,' not a *de novo*, standard of review." *Id*. at 832. "We have previously pointed out that clear error review is 'particularly' important where patent law is at issue because patent law is 'a field where so much depends upon familiarity with specific scientific problems and principles not usually contained in the general store house of knowledge and experience.'" *Id*. at 838 (quoting *Graver Tank & Mfg. Co.* v. *Linde Air Products Co.*, 339 U. S. 605, 610 (1950)).

"While claims are generally given their broadest possible scope during prosecution, the Board's review of the claims of an expired patent is similar to that of a district court's review [citation omitted], *see also* MPEP § 2258 I.G (directing Examiners to construe claims pursuant to *Phillips v.*

*AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) during reexamination of an expired patent)."[3] *In re Rambus, Inc.*, 694 F.3d 42, 46 (Fed. Cir. 2012).

The *Phillips* standard for claim construction used by a district court is guided by the principle that the words of a claim "are generally given their ordinary and customary meaning" as understood by a person of ordinary skill in the art in question at the time of the invention. *Phillips* at 1312-13. Under a *Phillips* analysis, the sources for understanding claim terms are "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 116 (Fed. Cir. 2004).

"Anticipation under 35 U.S.C. § 102 is a question of fact, while obviousness under § 103 is a question of law based on underlying findings of fact." *Kennametal, Inc. v. Ingersoll Cutting Tool Company*, 780 F.3d. 1376, 1381 (Fed. Cir. 2015). What the prior art discloses is a factual inquiry. *Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995).

[3]The '541 Patent will expire on December 24, 2015. Requester has effectively admitted that the present appeal will not be final before this date. (Appellant Brief, p. 5, n. 2).

This Court reviews factual findings by the Board for substantial evidence. *In re Gleave*, 560 F.3d 1331, 1335 (Fed. Cir. 2009). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "If the evidence in record will support several reasonable but contradictory conclusions," this Court "will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002).

## III. THE CLAIM CONSTRUCTIONS ARGUED BY REQUESTER ARE WRONG

### A. Broadest Reasonable Construction is the Wrong Construction Standard for an Expired Patent

The '541 Patent at issue in this case will expire on December 24, 2015. So, as admitted by Requester, the '541 Patent will expire prior to the finalization of this appeal and the issuance of a reexamination certificate. (Appellant Brief, p. 5, n. 2). Although claims under reexamination are given their broadest reasonable construction, that is not the standard used for claims of an expired patent. *Rambus*, 694 F.3d at 46. Accordingly, all of Requester's arguments seeking to overturn the Board's construction and

have this Court adopt a broad construction of the Allowed Claims under the guise of a "broadest reasonable interpretation" are inapposite because they rely on the wrong claim construction standard.

Under the proper *Phillips* standard of claim construction for reexamination of an expired patent, there is even more support for upholding the Board's construction. Of particular relevance with respect to the '541 Patent is that the original prosecution history of the '541 Patent confirms the correctness of the Board's construction. Despite extensive arguments made by the Patent Owner to the Examiner in reexamination, the Examiner did not consider the original prosecution history in construing the reexamined claims. (A57-78 and A100-129). But for the claims of an expired patent to be properly construed under the *Phillips* standard, the prosecution history should be consulted because "the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips* at 1317.

During original prosecution of the '541 Patent, Patent Owner overcame rejections of the claims based on U.S. Patent No. 5,234,433 to Bert. (A1703 and A1772). As shown in Fig. 36, Bert was cited as teaching a full-width, two-sided cutting guide.




FIG. 36

*Fig. 36 of U.S. Patent No. 5,234,433 (A2729)*

Patent Owner specifically argued that full-width cutting guides with cutting surfaces along both lateral and medial portions of the bone, including the lateral and medial portions of the anterior side of the bone, as shown, for example, in Fig. 36 of Bert, did not meet the intended scope of the claims of the ‘541 Patent. (A1695-96, A1734-35, A1767-68, A1981, A2727-2729 and A3326-3332). The Examiner in the original prosecution accepted these arguments and allowed the claims of the ‘541 Patent over the two-sided, full-width cutting technique taught by Bert that are like the cited references asserted by Requester in the reexamination. (A1663-1670).

Requester has made no secret of the fact that Requester is seeking to invalidate the claims of the '541 Patent utilizing prior art that is substantially similar to the Bert reference expressly overcome during original prosecution of the '541 Patent. Requester relied upon the broadest reasonable interpretation standard as the very basis for requesting reexamination based on the cited references. (A177). Because that standard no longer applies to the claims of the '541 Patent that are about to expire, Requester's arguments are no longer appropriate, regardless of their merit at the time reexamination was initiated.

Under the proper *Phillips* standard for claims construction that takes into consideration the original prosecution history of the '541 Patent, the Board's construction that the Allowed Claims do not read on full-width guides having cutting surfaces along both medial and lateral portions of the bone is a correct legal interpretation. Requester's arguments based on the wrong claims construction standard provide no reason whatsoever for this Court to overturn the Board's construction of the Allowed Claims.

### B. Even If Broadest Reasonable Construction Were Proper, Requester's Arguments are not "Reasonable"

Even assuming that the broadest reasonable construction standard of claim construction were proper at this stage of the proceeding, Requester

effectively reads out the word "reasonable" from the "broadest reasonable interpretation" standard in its zeal to advocate for claim constructions that are plainly improper under a *Phillips* analysis.

The use of a broadest reasonable interpretation standard does not give the Board the right to construe claims so broadly that the constructions are unreasonable under general claim construction principles. *Microsoft Corp. v. Proxyconn, Inc.*, No. 14-1542, -1543, slip op. at 6 (Fed. Cir. June 16, 2015). The Board must still consult the specification of the underlying patent and the patent's prosecution history upon a second review during reexamination. "Even under the broadest reasonable interpretation, the Board's construction 'cannot be divorced from the specification and the record evidence … and must be consistent with the one that those skilled in the art would reach." *Id.* at 7, *citing In re NTP, Inc.*, 654 F.3d 1279, 1288 (Fed. Cir. 2011) and *In re Cortright,* 165 F.3d 1353, 1358 (Fed. Cir. 1999). "A construction that is 'unreasonably broad' and which does not 'reasonably reflect the plain language and disclosure' will not pass muster." *Id., citing In re Suitco Surface, Inc.*, 603 F.3d 1255, 1260 (Fed. Cir. 2010).

Patent Owner has repeatedly and consistently – in the specification, original prosecution history and reexamination – pointed to the embodiment shown in Figure 18 of the '541 Patent as representative of the claims of the

'541 Patent directed towards an improved cutting guide that enables resection of the entire tibia or femur from a cutting guide positioned along only one of the medial or lateral sides of the bone and a specifically limited portion of the anterior side. (*See* A1109, A1695-1696, A1734-1735, A1767-1768, A1981, A2727-2729; A3326-3332.) The attempts by Requester to have the claims of the '541 Patent be construed so as to extend the full width of the bone with both medially positioned and laterally positioned guide surfaces used to resect the bone are directly contrary to this intrinsic evidence. Patent Owner submits that any such interpretation is therefore "unreasonable" and legally incorrect.

## III. THE BOARD PROPERLY DETERMINED THAT THE ALLOWED CLAIMS REQUIRE CUTTING ACROSS THE FEMUR AND/OR TIBIA FROM ONE SIDE OF THE KNEE TO THE OTHER

### A. The Board properly determined that Unamended Claims 35-38 and 49-52 require cutting across the knee from a guide positioned on an opposite side

Requester's arguments that the Board's construction of Unamended Claims 35-38 and 49-52 is wrong and that these claims, as properly construed, do not require cutting across the femur and/or tibia are flawed. They rely upon strained readings as to the import of claim terms and ignore fundamental claim construction principles. Much of Requester's arguments

focus on the allegedly open-ended language in the original base claims that were incorporated into the Unamended Claims when rewritten into independent form. (Appellant Brief, p. 18-21, 23-25, 27-30, 32-33, 37-41 and 61-62). These arguments are flawed in that they fail to appreciate that, even if aspects of those original base claims were open ended, the original dependent claim language of the Unamended Claims further restricts those claims. It was the language of the dependent Unamended Claims, not the language from the original base claims, that formed the basis for the Board's construction. Requester's arguments would have this Court find that the claim language of the dependent Unamended Claims was essentially meaningless in that, despite the plain meaning of the language, it somehow does not further restrict the scope of the original base claims.

#### 1. Requester's arguments on "including at least" are irrelevant because the dependent claims further restrict the original independent claim language

Each of Unamended Claims 35-38 and 49-52 was a dependent claim of the '541 Patent. For example, original dependent claim 35 of the '541 Patent recited:

> 35. The method of claim 13 wherein positioning the tibial cut guide locates the tibial cut guide generally medially and guiding the cutting tool having the saw blade with the cutting edge at the distal end of the long axis of the saw blade by using the tibial cut guide further includes cutting a lateral side of the tibia.

(A1121).

Claim 35 was amended during reexamination to recite the limitations of base claim 13, thereby further limiting the scope of independent claim 13 as issued. Yet, Requester focuses much of its argument in the Appellant Brief on the language of original base claim 13. (Appellant Brief, p. 18-21, 23-25, 27-30, 38-41 and 61-62). When Requester refers to the "first positioning limitation" and the "first guiding limitation," as well as the language "including at least," it is a reference to language found in base claim 13. These arguments simply ignore that this language was further restricted by virtue of the additional language in dependent claim 35. (Appellant Brief, pp. 20-21, 23-25, 27-30.) Requester's arguments for an error in claim construction made by the Board are themselves in error because they ignore the fundamental canon of claim construction that dependent claims further limit the independent claims from which they depend and must be individually evaluated for patentability. 37 C.F.R. § 1.75(c); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1564 n.1 (Fed. Cir. 1987).

The express findings of the Board demonstrate that Requester's arguments are without merit:

> It is only the language of the claims subject to the reversed rejections that specifically requires using a single guide to cut into the other side. The "single guide" language above is not meant to limit the claims to the presence of single guide, but merely to ***use of that guide to cut both sides***.

(A23 (emphasis added).)

The arguments presented by Requester based on the language in the original independent claims that ignore the limiting nature of the added dependent claims are specious and should be disregarded.

#### 2. Requester's arguments on "generally medially" and "both medially and laterally" don't consider the added limitations in the dependent claims

Requester also urges this Court to find that the Board erred in not finding that the claim term "generally medially" should mean "both medially and laterally" and that "cutting a lateral side of the tibia" with "the tibial cut guide generally medially" located should mean "cutting a lateral side of the tibia from anywhere along the tibia." (Appellant Brief, p. 22). A plain reading of the claims terms confirms that there was no error by the Board. The constructions advocated by Requester fail to properly evaluate the language of the claims and would essentially render the original dependent claim language meaningless. *In re Wilson*, 424 F.2d 1382, 1285 (CCPA 1970) ("All words in a claim must be considered in judging the patentability of that claim against the prior art."); *Panduit*, 810 F.2d at 1641 n. 1.

The argument by Requester that it was error for the Board not to find that the term "generally medially" also means "laterally" strains credulity. The ordinary meaning of the term cannot reasonably be stretched to include such a construction. Analysis of the term in view of the specification and prosecution history – which the Requester ignored – makes clear that the term is intended to convey a guide positioned as shown, for example, in Figure 18.

FIG. 18




*Fig. 18 of the '541 Patent (A1072*)

It can be seen that the guide shown in Fig. 18 of the '541 Patent is positioned "generally medially" because, while a portion of the guide is positioned "medially" along the medial side of the bone, a portion of the

guide also extends along the anterior (front) side of the bone and along the medial portion of that anterior side. Thus, the phrase "generally medially" makes clear that the guide does not need to be positioned exclusively and only along the medial side of the bone, but can also be positioned along the medial portion of the anterior side of the bone. The argument set forth by Requester that "generally medially" can somehow mean "laterally" is without merit.

The argument by Requester that the Board erred by not construing the claim language that Requester refers to as the Second Guiding Limitation to include cutting from the lateral side suffers from the same flawed analysis. (Appellant Brief, p. 25-27). Claim 35 clearly sets forth that the limitation of "cutting a lateral side of the tibia" is done with "the tibial cut guide" that is positioned "generally medially." Requester's arguments that these limitations can somehow be interpreted to cover cutting the lateral side from some other cutting guide located in another location are also meritless.

By their plain and ordinary meaning, as found by the Board, each of the Unamended Claims 35-38 and 49-52 expressly recite that a cutting guide is positioned adjacent one side of the bone and that specific cutting guide is used to cut across to the opposite side of the bone. (A23 ("The 'single guide' language above is not meant to limit the claims to the presence of a

single guide, but merely to the use of that guide to cut both sides.”)). Both the specification and file history of the ‘541 Patent confirm the Board’s interpretation. The strained constructions, rearrangement and ignoring of claim terms and misleading arguments presented by Requester provide no reason whatsoever for this Court to overturn the Board’s construction.

### B. The Board properly determined that Amended Claims 31, 33, 45 and 47 require cutting across the knee from a guide positioned on an opposite side

The arguments of Requester with regard to Amended Claims 31, 33, 45 and 47 are little more than a retread of the arguments made against Unamended Claims 35-38 and 49-52. (Appellant Brief, p. 30-38). Requester’s arguments require the Court to ignore the plain meaning of the claims, the specification and the file history in order to find that there was an error in the Board’s construction. Again, Requester’s arguments are largely based on limitations in the original base claims with Requester ignoring that the original dependent Amended Claims further limit that language. The arguments again rely on strained interpretations of the original dependent claim language that would essentially render those claims meaningless.

Requester even admits that its proposed construction of these claims is “admittedly strange.” (Appellant Brief, p. 36). This admission is a clear sign that Requester recognizes the futility of these arguments. Under the correct

standard of review, there is simply nothing which Requester has advanced that would provide this Court a basis for overturning the Board's claim construction, regardless of which claim construction standard is used.

#### 1. Allegedly open ended nature of the "slot" in the original independent claims is irrelevant because of the further limitation added by the dependent claims

As with Unamended Claims 35-38 and 49-52, Requester's reliance on allegedly open ended language in the original base claims of Amended Claims 31, 33, 45 and 47 is misplaced because those claims further limit the base claims. For example, Requester argues that the positioning step of "the slot" in original base claim 9 of claim 31 leaves open the possibility of positioning another slot of the cutting guide in another location and using other cutting approaches to create the resected surface. (Appellant Brief, pp. 32-33 and 37-38). However, claim 31 further restricts the use of the claimed slot:

> 31. The method of claim 9 wherein cutting the end of the one of the femur or the tibia by moving the cutting tool in a direction along the long axis comprises plunging the saw blade through ***the slot*** to create the resected surface on both a medial portion or a lateral portion of the one of the femur or the tibia adjacent to the position of the cutting guide and a medial portion or a lateral portion of the one of the femur or the tibia across from and opposite to the position of the cutting guide.

(A1120 (emphasis added)).

Claim 31 of the ‘541 Patent therefore clearly limits “the slot” recited in claim 9 as being used to create a resected portion across both a medial or lateral portion of the bone adjacent the guide as well as the opposite portion of the bone across from the guide.

As the Board properly found, use of any other slot to create the claimed resected surfaces would not meet the limitations of these dependent claims that the Board found to be narrower than the original base claims upon which Requester’s arguments are based. (A24-25.) Therefore, Requester’s arguments regarding a construction of Amended Claims 31, 33, 45 and 47 that would permit use of another slot provide no basis for challenging, let alone overturning, the Board’s construction.

#### 2. Requester’s arguments on “resected surface on both a medial portion or a lateral portion” ignore the plain language of the dependent claims

With regard to the Amended Claims 31, 33, 45 and 47, Requester again argues for a construction that ignores the plain language of the claims with respect to creating “a resected surface on both a medial portion or a lateral portion” adjacent the cutting guide and also on “the lateral or medial portion on the opposite side of the bone from the cutting guide.” (Appellant Brief, p. 33-38). Requester’s argument urges that the proper construction of the claims allows the cutting guide to be on either the medial side or lateral

side but the cutting guide can be used to cut only one of the sides. This nonsensical construction is contrary to the plain language of the claim, the specification, the prosecution history and the express findings of the Board.

As quoted above, claim 31, for example, recites that the same slot is used to "create the resected surface ***on both*** a medial portion or a lateral portion … adjacent to the position of the cutting guide ***and*** a medial portion or a lateral portion … across from and opposite to the position of the cutting guide." (A1120 (emphasis added)). It is difficult to understand how one could even come to an interpretation that this claim limitation does not require that both a medial portion and a lateral portion of the bone be cut. The straightforward reading of this claim as requiring both a medial and lateral portion of the bone to be cut with a cutting guide positioned along only one of a medial or lateral side of the bone is again strongly supported by the intrinsic evidence.

Referring again to Figure 18, the slot is positioned along only one of the medial or lateral portions of the bone, but is used to cut across the bone so that both the medial or lateral portion next to the guide and the corresponding lateral or medial portion across from the guide are both cut. Use of another slot or cutting guide to create the recited resected surface does not meet the limitations of these claims. As stated by the Board:

> Requester goes on to assert that claim 31 'does not mean that both a medial portion and a lateral portion of the knee be cut.' We disagree. Claim 31 specifically recites 'plunging the saw blade through *the slot* to create the resected surface on *both* a medial portion or a lateral portion, i.e., this language cannot refer to other portions of the cutting guide as is the case with the independent claim, but requires the cut through both sides to be made through the same slot regardless of what other slots may be present as allowed by the broader claim 9.

(A24-25 (emphasis in original and citation omitted)).

Requester's arguments that Amended Claims 31, 33, 45 and 47 do not require both sides of the bone to be cut from a guide on only one side provide no basis for challenging, let alone overturning, the Board's construction.

### C. The Board properly determined that Amended Claims 39, 40, 53 and 54 require cutting across the knee from a guide positioned on an opposite side

Requester's sole argument with regard to construction of Amended Claims 39, 40, 53 and 54 is that the claims allow two different cuts to be made from two different directions along two different guide surfaces. (Appellant Brief, p. 38-41). Once again, this argument finds no support in the claim language and is contrary to the specification, prosecution history and findings of the Board. Claim 39, for example, recites:

> The method of claim 16 wherein the femoral cut guide extends mediolaterally for a width less than one-half of a width of the femur and guiding the cutting tool having the saw blade with the cutting edge at the distal end of the long axis of the saw

> blade by using the femoral cut guide further includes cutting a contralateral compartment relative to the one of the medial side or the lateral side of the femur.

(A1121).

This dependent claim recites that the femoral cut guide "extends mediolaterally for a width less than one-half of a width of the femur," and that specific femoral cut guide is used to cut a "contralateral compartment" relative to the "one of the medial side or the lateral side" from which the cut is made.

Requester's position that the contralateral compartment can be cut from another direction ignores the fact that it must be cut from the femoral cut guide that is less than one half the width of the bone, i.e., that the guide is on the opposite half of the bone from the compartment being cut. (Appellant Brief, p. 39-41). As with the previous claims, the plain reading of this claim requires a cutting tool to be extended from a cutting guide on one side of the bone to create a resected surface on a compartment across the bone from the position of the cutting guide, as shown, for example, in Figure 18 and consistently argued throughout original prosecution and reexamination.

Requester further misconstrues the phrase "contralateral compartment" in these claims, which according to simple rules of grammar

refers to either the medial compartment or the lateral compartment opposite from the lateral or medial side of the bone, and not the central compartment comprising the central third of the bone. (A25). Requester's arguments regarding these claims are therefore also contrary to the ordinary meaning of the claims and provide no basis for challenging, let alone overturning, the Board's construction.

## IV. THE PRIOR ART DOES NOT DISCLOSE CUTTING ACROSS THE FEMUR OR TIBIA FROM ONE SIDE OF THE KNEE TO THE OTHER SIDE AS CLAIMED

The Board in its decisions made express factual findings that none of the cited references – Samuelson, Biomet, and Protek – teach cutting across the femur or the tibia from one of the medial or lateral sides of the bone to the opposite lateral or medial side of the bone. (A9-10 and A13-14). Yet Requester persists in this appeal in arguing based solely on attorney argument that these references somehow teach just such a cutting technique.[4] As a matter of law, mere attorney argument cannot form a basis for overturning a factual finding of the Board that is supported by substantial evidence. *Estee Lauder, Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed. Cir.

[4]*See*, Section I, *supra*, for arguments why the newly submitted attorney-modified and annotated figures in the Appellant Brief are improper and should not be considered as support for these attorney arguments.

1997) ("Arguments of counsel cannot take the place of evidence lacking in the record.").

### A. Substantial evidence supports the Board's factual finding that there is no teaching in Samuelson of cutting across the femur or tibia from one side to the other

The only passages in the specification of Samuelson that Requester has cited as allegedly supporting cutting across the femur or tibia from a guide on one side to the opposite side have already been expressly addressed by the Board and found not to teach cutting across either bone. (*Compare* Appellant Brief, pp. 57-60 to A9-10). For both the tibial and femoral cutting guides, Samuelson expressly states that only one side of the guide is discussed for purposes of clarity and brevity because both sides are used identically in the respective procedures. (A10, A2184 and A2186). Accordingly, substantial evidence supports the Board's factual finding that Samuelson does not teach cutting across the femur or tibia from one side to the other as claimed:

> Third Party Requester ("Requester") asserts that Samuelson specifically teaches using one swing arm to perform a resection, but we do not agree that the portion cited by Requester clearly states that this is the case. In referring to the operation of the swing arms 200 and 200', we agree with Patent Owner that the description appears only to describe cutting the operation of the bone on the same side as the swing arm and subsequently using the opposite guide to cut the opposite side.

(A10 (citation omitted); *see also* A9 (tibia)).

Requester is, at best, relying upon unsupported attorney argument to exploit what is argued to be an ambiguity in the disclosure of Samuelson to then further argue that Samuelson somehow discloses a technique that is in no way explicitly recited in Samuelson. Even if attorney argument alone were sufficient to overcome the substantial evidence standard that applies on a review of the factual findings of the Board on appeal, which it cannot, the Board has specifically addressed this argument and concluded that any such ambiguity in Samuelson is not sufficient to support an anticipation argument:

> Regardless we do not find this disclosure sufficiently explicit to support an anticipation rejection and do not sustain the Examiner's rejection.

(A10).

Requester's reliance on statements in the Board's Decision on Rehearing regarding the saw blade potentially passing beyond the midline of the bone is misleading and wrong. The Board never found that Samuelson teaches that the saw blade would pass from one side of the guide beyond the midline into the other part of the bone, because Samuelson provides no such teaching. The Board only addressed the argument in the alternative, stating

that ***"[e]ven if*** part of the opposite side is cut into …."[5] (A26 (emphasis added)). In reality, with guides such as those disclosed in Samuelson, the medial portion of the bone is cut from the medial and anteromedial portions of the guide, the lateral portion of the bone is cut from the lateral and anterolateral portions of the guide, and if any central portion of the bone is left uncut by this approach, the guide is removed and this portion of the bone is removed freehand.[6]

There is no support within Samuelson for Requester's contention that Samuelson teaches cutting across the midline of the bone, let alone into a contralateral compartment of the bone (i.e., two thirds across). However, as found by the Board, even if there were a teaching of cutting just across the midline, it still would be insufficient to support anticipation of the claims.

In this appeal, Requester is the one who bears the heavy burden of demonstrating that the Board's factual findings are not supported by substantial evidence. Requester utterly fails to carry that burden with

---

[5] Requester conveniently leaves the "[e]ven if" portion of the quote from the Board's decision out of its argument in portraying the Board as finding that Samuelson contains such a teaching. This is, at a minimum, misleading. (Appellant Brief, p. 44.)

[6]Because Requester did not present its "midline" argument until rehearing, Patent Owner was precluded from introducing expert evidence contradicting the argument. Such evidence, including citation to objective prior art documents such as U.S. Patent No. 4,502,483 to Lacey, has been introduced at the PTO in the reexamination of child U.S. Patent No. 7,967,822. (Reexamination Control No. 95/002,152).

respect to the factual findings the Board made that Samuelson only teaches the operation of "cutting the bone on the same side as the swing arm and subsequently using the opposite guide to cut the opposite side." (A10).

### B. Substantial evidence supports the Board's factual finding that there is no teaching in Protek of cutting across from one side of the tibia or femur to the other

Requester's arguments that Protek teaches cutting across the tibia from one side of the guide as claimed also find no support in Protek and have been refuted by express factual findings of the Board. Requester again primarily relies on impermissible new attorney-modified figures that have no basis in the disclosure of Protek. (Appellant's Brief, pp. 52-53). To the extent Requester cites to the actual disclosure of Protek, the citations do not stand for the proposition for which they are cited. (*Id*., pp. 56-57).

It is undisputed that even if only one arm of the tibial cutting guide of Protek is used the guide includes both the medial arm and a central cutting block, and the central cutting block extends not only along the anterior side of the tibia, but across the medial compartment, central compartment, and lateral compartment of the tibia and Protek expressly states that the cut is made using the top surface of the *entire* guide (including the undeployed lateral arm on the anterior side). (A2297) (emphasis added). Requester can cite to no portion of Protek teaching that the lateral side of the tibia is cut

from the medial portion of the guide, rather than from the more conveniently positioned laterally located portions of the anteriorally positioned cutting block and undeployed lateral arm that are positioned directly adjacent the lateral portion of the tibia. Based on the evidence and arguments in the record, the Board made the following factual finding with respect to Protek:

> We agree with Patent Owner that Protek fails to teach cutting all the way across the bone utilizing the cutting guide positioned on one side. As Patent Owner states, '[t]here is no express teaching in Protek F/S Modular that the lateral <u>side</u> of the tibia is actually cut from the medial side guide surfaces, rather than the anterior guide surface.'

(A13) (emphasis in original).

As to the claims expressly requiring cutting across the femur from one side of the femur to another (37-39 and 51-53), Requester has not even attempted to cite to any portion of Protek as teaching the limitations of these claims. No such argument could be made, as Protek expressly discloses that both the medial and lateral guide arms of the distal femoral cutting guide, in addition to the full-width central cutting block, are used to resect the femur. (A2301).

Again, Requester utterly fails to carry that burden with respect to the factual findings the Board made that Protek "fails to teach cutting all the way across the bone utilizing the cutting guide positioned on one side." (A13).

### C. Substantial evidence supports the Board's factual finding that there is no teaching in Biomet of cutting across from one side of the tibia or femur to the other

As with Samuelson and Protek, in arguing that Biomet teaches cutting across the tibia from a guide surface on one side into the opposite side, Requester relies only on unsupported annotated Figures and language in the reference that the Board has already expressly found does not teach cutting across the tibia. (Appellant Brief, pp. 54-56). As with Protek, even if the guide of Biomet is used with only the medial swing arm in place, the guide is utilized with both this medial swing arm and the anterior cutting block and undeployed lateral swing arm extending along the anterior side of the tibia. (A2208). Requester can again point to no aspect of Biomet that discloses that the lateral side of the tibia is cut from a guide surface on the medial portion of the tibia, rather than the more conveniently positioned anterior guide surface and undeployed lateral swing arm that extend along the lateral portion of the anterior side of the tibia. Based on the evidence and arguments in the record, the Board made the following factual finding with respect to Biomet:

> We agree with Patent Owner that Biomet fails to teach cutting all the way across the bone utilizing the cutting guide positioned on one side.

(A13.)

With regard to those claims that expressly recite that an opposite side of the femur is cut from a guide on another side, Requester again does not even attempt to cite anything regarding one sided cutting with the femoral guide of Biomet. As with Protek, no such argument could be made as Protek expressly discloses that both medial and lateral guide arms of the distal femoral cutting guide, in addition to the full-width central cutting block, are used to resect the femur. (A2205).

Again, Requester fails to carry its burden of demonstrating that substantial evidence does not support the factual findings the Board made that "Biomet fails to teach cutting all the way across the bone utilizing the cutting guide positioned on one side." (A13).

### D. Because neither Samuelson nor Protek teach cutting across the bone the claims cannot be obvious over the combination

There is no basis argued by Requester in the Appellant Brief for finding any of the Allowed Claims obvious over the combination of Samuelson and Protek. Because Requester's entire argument is premised upon the faulty position as to what is disclosed in Protek, as set forth above, the proposed combination fails to meet the claim limitations even if there were some motivation or reasoned rationale for combining the references. As found by the Board,

> [H]aving already determined that neither of Samuelson nor Protek teaches the pertinent limitations of these claims, it follows that the combination cannot make up for these deficiencies.

(A14.)

The purported combination of Samuelson and Protek therefore provides no basis for overturning the Board's decision.

## VI. AMENDED CLAIMS 31, 33, 39-40, 45, 47, 53 AND 54 SHOULD BE ISSUED FOLLOWING AFFIRMANCE OF THE BOARD'S DECISIONS

Requester takes the apparent position that Amended Claims 31, 33, 39-40, 45, 47, 53 and 54 may never be issued because the '541 Patent will expire prior to issuance of a reexamination certificate. (Appellant Brief, p. 5 n. 2). Apparently, Requester believes that the amendments made to the original base claims of these Amended Claims would not be entered for an expired patent, and that this would result in all of the Amended Claims being cancelled instead of issuing in a reexamination certificate. This position is wrong.

Assuming that the Amended Claims are now interpreted in view of the original prosecution history under the *Phillips* standard, the amendments to the original base claims did not change the scope of the claims and this Court should direct the USPTO to enter the amendments. However, even if

those amendments to the original base claims are determined by this Court to have changed the scope of those claims, these dependent claims were allowed on their own merit irrespective of the content of the base claims from which they depend. Therefore, even if it is determined that the amendments changed the scope of the base claims, the Amended Claims as separately allowable dependent claims must be allowed to issue off of the original, unamended base claims.

Patent Owner has argued throughout this reexamination that the amendments made to the claims during reexamination did not change the scope of the claims and were done to comport the claims with the proper legal constructions of the claims in view of the prosecution history because of the unreasonable constructions being given to those claims under the "broadest reasonable interpretation" being applied by the Examiner. (A1727-1729; A3333-3339). Such amendments that do not alter the scope of the claims can be entered following reexamination. *Institut Pasteur v. Focarino*, 738 F.3d 1337, 1343 (Fed. Cir. 2014) ("[T]he PTO cannot issue amended claims for an expired patent if the amendments change the claim's scope." (emphasis added).) As such, the Amended Claims should issue following reexamination depending from the amended base claims.

On the other hand, if it is determined that the amendments to the original base claims of the Amended Claims substantively changed the scope of those base claims, the Amended Claims should be issued following the conclusion of this reexamination as part of the reexamination certificate because those claims were allowed by virtue of the original language of those dependent claims, without regard to the language of the underlying base claims.[7]

In the Decision on Rehearing, the Board made clear that, in its view, the original base claims of the Amended Claims were invalid both prior to and following the amendments made to those claims during reexamination under the broadest reasonable interpretation for claim construction which the Board was applying at the time. (A22-23). The Board found that it was the original language of the allowed dependent claims that made the Allowed Claims allowable. (*Id*). Whether that original dependent claim language further defines the original base claims or the base claims as amended during reexamination, these dependent claims define allowable subject matter. Thus, if it determined that the amendments to the original base claims substantively changed the scope of those claims, the Amended Claims

[7] Although original dependent claims 53 and 54 were amended to add a single word to those claims, the amendment did not form any part of the reasoning for allowance of the claims and therefore these claims should issue without the one word amendment.

should proceed to be included in a reexamination certificate based on the original independent base claim language.

## VII. CONCLUSION

Based on the foregoing, the decisions of the Board reversing the rejections of claims 31, 33, 35-40, 45, 47 and 49-54 should be upheld. Furthermore, this Court should direct the USPTO to issue a reexamination certificate that includes the Unamended Claims, as well as the Amended Claims that have not changed the scope of claims when properly construed under the claim construction standard relevant to an expired patent, and that were found to contain allowable subject matter irrespective of the amendments to the base claims.

Respectively submitted,

Date: July 1, 2015 /s/ Brad Pedersen

BRAD D. PEDERSEN
PATTERSON THUENTE PEDERSEN, P.A.
80 South Eighth Street, Suite 4800
Minneapolis, MN 55402
Telephone: 612-349-5740
Facsimile: 612-349-9266

*Counsel for Appellee*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Response Brief of Puget BioVentures, LLC:

complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B). This brief contains 10,001 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii) and FED. CIR. R. 32(b). Microsoft Word 2010 was used to calculate the word count; and

complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6). This brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type style.

Date: July 1, 2015

/s/ Brad Pedersen

BRAD D. PEDERSEN
PATTERSON THUENTE PEDERSEN, P.A.
80 South Eighth Street, Suite 4800
Minneapolis, MN 55402
Telephone: 612-349-5740
Facsimile: 612-349-9266

*Counsel for Appellee*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2015, a true and correct copy of the foregoing Response Brief of Appellee Puget BioVentures, LLC was served on all counsel of record through the appellate CM/ECF system.

July 1, 2015

/s/ Brad Pedersen

BRAD D. PEDERSEN
PATTERSON THUENTE PEDERSEN, P.A.
80 South Eighth Street, Suite 4800
Minneapolis, MN 55402
Telephone: 612-349-5740
Facsimile: 612-349-9266

*Counsel for Appellee*