**2015-1468**
**(Reexamination No. 95/001,469)**

# United States Court of Appeals for the Federal Circuit

BIOMET ORTHOPEDICS, LLC, BIOMET MANUFACTURING CORPORATION,
*Appellants*,

v.

PUGET BIOVENTURES, LLC, formerly HUDSON SURGICAL DESIGN, INC.,
*Appellee*.

*Appeal from the United States Patent and Trademark Office Patent Trial and Appeal Board*

## REPLY BRIEF FOR APPELLANT

Douglas D. Salyers
Paul E. McGowan
Dustin B. Weeks
TROUTMAN SANDERS LLP
600 Peachtree Street, N.E.
Suite 5200
Atlanta, Georgia 30308
404-885-3000
*Counsel for Appellants*

**AMENDED CERTIFICATE OF INTEREST**

Counsel for Appellants Biomet Orthopedics, LLC and Biomet Manufacturing, LLC (f/k/a Biomet Manufacturing Corporation) certifies the following:

1. The full name of every party or amicus represented by me is:

   Biomet Orthopedics, LLC and Biomet Manufacturing, LLC (f/k/a Biomet Manufacturing Corporation)

2. The name of the real party in interest represented by me is:

   Biomet Orthopedics, LLC and Biomet Manufacturing, LLC

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

Biomet, Inc. has recently become wholly owned by Zimmer Biomet Holdings, Inc., a publicly traded company. More than 10% of the stock of Zimmer Biomet Holdings, Inc. is held by a consortium of private equity funds affiliated with four investment firms, two of which, the Blackstone Group L.P. and The Goldman Sachs Group, Inc., are publicly traded.

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this Court are:

TROUTMAN SANDERS LLP

Douglas D. Salyers, Paul E. McGowan, Dustin B. Weeks, Trenton A. Ward*

*Trenton A. Ward previously represented Biomet Orthopedics, LLC and Biomet Manufacturing Corporation before the U.S.P.T.O., but is no longer associated with Troutman Sanders LLP

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ........................................................................ i

PRELIMINARY STATEMENT ......................................................................1

ARGUMENT ..........................................................................................1

I. HUDSON'S MOTION TO STRIKE SHOULD BE DENIED ......................1

A. Biomet's appeal does not rely on new evidence or argument.............1

B. Biomet's Opening Brief was the first opportunity to rebut the Board's new claim constructions and prior art interpretations ...........4

II. STANDARD OF REVIEW – NEITHER *TEVA* NOR *PHILLIPS* ARE APPLICABLE ......................................................................4

III. BIOMET PROPOSED PROPER CLAIM CONSTRUCTIONS ..................6

A. Broadest reasonable construction standard applies.............................6

B. Biomet's claim constructions are "reasonable" ..................................8

IV. THE BOARD ERRED IN DETERMINING THE ALLOWED CLAIMS REQUIRE A SINGLE GUIDE PLACED ON ONE SIDE OF THE KNEE FOR PERFORMING A COMPLETE RESECTION..........9

A. The Board erred in finding the Allowed Claims "describe a complete resection" – a construction Hudson does not address and the claims do not support...........................................................9

B. The Board erred in determining Unamended Claims 35-38 and 49-52 require cutting one side of the knee from a guide positioned on an opposite side .........................................................12

1. Hudson's arguments about "including at least" ignore claim terms in both the original and dependent claims ...........13

2. Hudson's arguments on "generally medially" and "both medially and laterally" misread the limitations added in the dependent claims ...........................................................14

C. The Board erred in determining Amended Claims 31, 33, 45, and 47 require cutting one side of knee from a guide positioned on an opposite side ......................................................................16

1. The open ended nature of the "slot" in the original independent claims is relevant to the location of the cut guide which can have other slots ...........................................16

**TABLE OF CONTENTS**
(continued)

**Page**


2. Biomet's arguments on "resected surface on both a medial portion or a lateral portion" match the contorted language of the dependent claims ..... 17

D. The Board erred in determining Amended Claims 39, 40, 53, and 54 require cutting across the knee from a guide positioned on an opposite side ..... 19

V. THE PRIOR ART DISCLOSES A SINGLE CUT GUIDE PLACED ON ONE SIDE OF THE KNEE FOR PERFORMING A COMPLETE RESECTION OR FOR CUTTING ACROSS THE MIDLINE ..... 21

A. The Board's finding that Samuelson only taught a two-sided surgical approach is not supported by substantial evidence as Samuelson teaches a complete resection from one side ..... 22

B. The Board's finding that even Samuelson's two-sided surgical approach taught cutting across the midline is supported by substantial evidence, but its ultimate decision to allow the claims is not ..... 23

C. The Board's finding that there is no teaching in Protek of cutting across the femur or tibia from one side to the other is not supported by substantial evidence ..... 24

D. The Board's finding that there is no teaching in Biomet of cutting across the femur or tibia from one side to the other is not supported by substantial evidence ..... 26

E. The Allowed Claims are obvious over Samuelson and Protek ..... 28

VI. HUDSON'S ARGUMENTS REQUESTING ISSUANCE OF AMENDED CLAIMS IS BOTH PREMATURE AND INCORRECT ..... 28

A. Until the USPTO issues the reexamination certificate, it is premature for this Court to decide whether Amended Claims should issue ..... 29

B. If the Court's decision issues after December 24, 2015, the appeal of the Amended Claims should be dismissed as moot ..... 29

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..... 33

CERTIFICATE OF SERVICE ..... 1

CERTIFICATE OF COMPLIANCE ..... 2

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ....................13

*Facebook, Inc. v. Pragmatus AV, LLC*,
582 Fed. App'x 864 (Fed. Cir. 2014) ....................6

*Fleming v. Coward*,
534 Fed. App'x 947 (Fed. Cir. 2013) ....................29

*In re Baxter Int'l, Inc.*,
678 F.3d 1357 (Fed. Cir. 2012) ....................2

*In re Cuozzo Speed Tech., LLC*,
No. 2014-1301, 2015 U.S. App. LEXIS 11714 (Fed. Cir. July 8, 2015) ....................5

*In re Rambus, Inc.*,
694 F.3d 42 (Fed. Cir. 2012) ....................5

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004) ....................2

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004) ....................8

*Institut Pasteur v. Focarino*,
738 F.3d 1337 (Fed. Cir. 2013) ....................29

*Inventio AG v. Thyssenkrupp Elevator Americas Corp.*,
649 F.3d 1350 (Fed. Cir. 2011) ....................2

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
764 F.3d 1392 (Fed. Cir. 2014) ....................2

*Netword, LLC v. Centraal Corp.*,
242 F.3d 1347 (Fed. Cir. 2001) ....................4

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................passim

## TABLE OF AUTHORITIES
(continued)

**Page**

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015) .......... 4, 5

STATUTES

35 U.S.C. § 141 .......... 29

37 C.F.R. § 1.530 .......... 28, 29, 32

## PRELIMINARY STATEMENT

Hudson's Response Brief, ignoring the language of its claims, basically contends all of the Allowed Claims can be summarized as simply using a cutting guide placed on one side of the knee to cut into the other side. The Allowed Claims contain much more complicated and ambiguous language, which Biomet's Opening Brief has thoroughly explained and Hudson has completely avoided. Hudson has also avoided defending the "complete resection" claim construction the Board belatedly fashioned to overcome the prior art. The bottom line is that Hudson cannot defend the Allowed Claims from the prior art teachings of both one-sided and two-sided cutting approaches – both of which perform either partial or complete resection methods matching the open ended claim language.

## ARGUMENT

### I. HUDSON'S MOTION TO STRIKE SHOULD BE DENIED

#### A. Biomet's appeal does not rely on new evidence or argument

Hudson moved to strike portions of Biomet's Opening Brief under Federal Circuit Rule 27(e)[1] arguing that Biomet introduced "new evidence and argument" in certain "annotated" and "modified" figures. Hudson's Response ("Red Br.") 13-

---

[1] Hudson's motion violates Federal Circuit Rule 27(a)(5) by failing to indicate whether Hudson consulted with Biomet (it did not) to determine if Biomet would oppose the motion (it does) and would file a response (it now has).

17. Hudson's motion should be denied since it identifies no "evidence" or "argument" that substantively differed from what Biomet has consistently argued. Indeed, the accused "new" figures are virtually identical to those used in the PTO proceedings.

Motions to strike are routinely denied when the same arguments were made below. *See*, *e.g.*, *Inventio AG v. Thyssenkrupp Elevator Americas Corp.*, 649 F.3d 1350, 1352 (Fed. Cir. 2011) (motion to strike "lacks merit" where "[Hudson] simply disagrees with [Biomet's] legal arguments" and "borders on the type of frivolous and wasteful litigation tactics previously frowned upon.") (citation omitted). *See also Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1396 n.3 (Fed. Cir. 2014) (motion to strike denied where party made argument challenged in appeal brief in proceedings below).

Hudson's motion only relies on one waiver case, *In re Watts*, where a party raised arguments on appeal that were *never presented to the Board*. *In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004). Hudson understandably makes no waiver argument,[2] since the claim construction and prior art arguments presented in the "annotated" and "modified" figures in Biomet's Opening Brief ("Blue Br.") are not

[2] Waiver only applies when the party failed to provide *any* analysis of an issue in a prior brief. *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (Court "does not demand the incantation of particular words; rather, it requires that the lower court be **fairly put on notice** as to the substance of the issue.") (citation omitted).

new and closely match the same figures presented to the Board.







Requester's Oppo. (A3516) Blue Br. 36

For example, Hudson cites modified Figure 6A of Samuelson (right figure above) as an example of "new evidence" and "attorney-modified figures...never presented to the Board." Red Br. 14, 17. But the same figure appeared in Biomet's Rehearing Opposition (left figure above) (A3516) (minus a single text box). As Hudson concedes (Red Br. 14), Biomet described this figure as being "modified" (Blue Br. 35-36). A similar figure was used multiple times during Biomet's arguments to the Board. (*See*, *e.g.*, A3515-16, A3520, A3523).[3]

Hudson's final complaint that the figures include attorney argument and/or lack declaration support is equally flawed. Red Br. 17. Each of the figures has been annotated – e.g., using text boxes or depictions of a bone or saw – to illustrate Biomet's textual arguments about the side cut teachings of the prior art. This same

[3] Hudson's other modified Fig 6A example on Red. Br. 15 also reflects the arguments Biomet previously made to the Board about Samuelson's cutting direction. *Compare* Requester's Oppo. (A3515) *with* Blue Br. 44.

approach was consistently used throughout the reexamination – without objection by Hudson, the Examiner or the Board. Hudson's motion should be denied.[4]

### B. Biomet's Opening Brief was the first opportunity to rebut the Board's new claim constructions and prior art interpretations

In its Rehearing Decision, the Board introduced the new "complete resection" claim construction and made new prior art interpretations not previously presented by either party. *See infra* 11-14; A20-28. Biomet had no opportunity to respond to this decision in the USPTO, and thus its Opening Brief contained "new" arguments that were properly responsive to the Board's "new" findings. *Cf. Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1356 (Fed. Cir. 2001) (motion to strike denied because "[w]hen a potentially material issue or argument in defense of the judgment is raised for the first time in the appellee's brief, fundamental fairness requires that the appellant be permitted to respond, lest the appellate court deem the point conceded.").

## II. STANDARD OF REVIEW – NEITHER *TEVA* NOR *PHILLIPS* ARE APPLICABLE

Hudson alleges that "any factual findings underlying a claim construction are given deference on appeal" and cites the Supreme Court's recent decision in

---

[4] Hudson makes equally specious arguments about other modified figures in Biomet's Opening Brief, namely, "Fig. 6A of Samuelson at pages 45, 47, 49 and 51-52"; "a figure from Protek...at page 53"; and "a figure from Biomet at pages 54-55." Red Br. 16. These arguments fail for the same reasons.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015). Red Br. 18. Although *Teva* requires deference for a lower court's "subsidiary factual findings about...extrinsic evidence," the Supreme Court explained:

> when the [lower] court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction *de novo*.

135 S. Ct. at 841. Here, the Board's claim constructions made no findings of fact based on extrinsic evidence (e.g., expert declarations), nor does Hudson point to any such factual findings. *See* A7-8. Accordingly, the Board's claim construction is entitled to no deference. *In re Cuozzo Speed Tech., LLC*, No. 2014-1301, 2015 U.S. App. LEXIS 11714, at *25 (Fed. Cir. July 8, 2015) ("Because there is no issue here as to extrinsic evidence, we review the claim construction de novo.").

Similarly, the standard from *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), is also inapplicable. As Hudson acknowledges, *Phillips* only applies to "the Board's review of the claims of an expired patent." Red Br. 18-19 (quoting *In re Rambus, Inc*. 694 F.3d 42, 46 (Fed. Cir. 2012)). The '541 patent does not expire until December 24, 2015, so, as of now, the claims should be given their broadest reasonable interpretation. *Cuozzo*, 2015 U.S. App. LEXIS 11714, at *15-17. Only if this Court's decision is rendered after the expiration of the '541 Patent, should the claims be construed in accordance with *Phillips*. *Rambus*, 694 F.3d at 46; *see*

*also Facebook, Inc. v. Pragmatus AV, LLC*, 582 Fed. App'x 864 (Fed. Cir. 2014) (holding that *Phillips* standard applies when patent expired during appeal of the Board's decision in *inter partes* reexamination) (nonprecedential).

## III. BIOMET PROPOSED PROPER CLAIM CONSTRUCTIONS

### A. Broadest reasonable construction standard applies

The '541 Patent has not yet expired so the claims of the '541 patent should be given their broadest reasonable construction. Even if this Court renders its decision after expiration, however, Hudson has not shown how Biomet's proposed claim constructions are inconsistent with *Phillips*.

The only substantive argument Hudson makes under *Phillips* relates to the Bert reference cited during original prosecution. Specifically, Hudson alleges:

> Patent Owner specifically argued that full-width cutting guides with cutting surfaces along both lateral and medial portions of the bone, including the lateral and medial portions of the bone, including the lateral and medial portions of the anterior side of the bone, as shown, for example, in Fig. 36 of Bert, did not meet the intended scope of the claims of the '541 Patent.

Red Br. 22. Thus, according to Hudson, the Allowed Claims cannot "read on full-width guides having cutting surfaces along both medial and lateral portions of the bone." *Id*. at 23. Hudson is wrong for several reasons.

First, as the Board properly found, "[t]he mere fact that a construction during reexamination covers such prior art [considered during original prosecution] is not dispositive because claim construction may be the error that the

reexamination corrects." A7 ("We therefore are not persuaded that a new construction that encompasses past prior art is improper."). Hudson cites no case law to the contrary.

Second, as the Board also properly found, Hudson's statements during prosecution regarding the Bert reference related only to issued Claim 9, from which only Amended Claims 31 and 33 depend. A7-8; A1734-35. Thus, Hudson's argument is wholly irrelevant to Amended Claims 39, 40, 45, 47, 53, and 54 and all of the Unamended Claims 35-38 and 49-52. Even for Amended Claims 31 and 33, however, issued Claim 9 was materially amended during reexamination rendering the earlier Bert discussion irrelevant as well.

Finally, during prosecution, Hudson did not disclaim all "full-width cutting guides with cutting surfaces along both lateral and medial portions of the bone" as it now suggests. Red Br. 22. Rather, Hudson merely argued that Bert taught a cutting guide "positioned on the front/anterior side of the tibia" (A1734) while Claim 43 (which issued as Claim 9) recited "the step of positioning the guide 'with at least a portion of the slot facing...one of the medial aspect or lateral aspect'" (A2922). Thus, if anything, Hudson disclaimed (only with respect to Claim 9 and its dependent claims) a cut guide facing *only* the anterior side – not guides facing both the medial and lateral sides as it now contends. At best, "it is unclear from this single statement that the type of disavowal suggested by [Hudson] was

actually made." A8.

Accordingly, even if *Phillips* ultimately applies, Hudson has not shown how Biomet's constructions are inconsistent with that standard.

**B. Biomet's claim constructions are "reasonable"**

To overcome Biomet's claim construction arguments, which are premised on the actual language used in each claim, Hudson takes the legally unsupportable position that the claims of the '541 Patent must match the embodiment shown in Figure 18. Hudson's assertion that Figure 18 supports its "side cutting" claim construction position is disingenuous as the specification exclusively described that figure as being used to "stabilize the milling bit in operation." A1109. The specification does not describe a side cutting approach, nor one using a saw blade. Instead, Figure 18 vaguely refers to "the milling bit may be plunged across the tibia and then moved therealong." *Id.* The specification neither says how much of the tibia is cut using the milling bit, nor identifies whether the medial slot or anterior slot of Figure 18 is used to perform the milling operation.

While Figure 18 shows one embodiment, claims generally are not limited to any particular embodiment disclosed in the specification, even where only a single embodiment is disclosed. *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004). This is particularly true when there are other embodiments, like Figure 16 shown below, that would support a

construction allowing cutting guides on both sides of the knee (A1072):

FIG. 16




Finally, Hudson's criticism of Biomet' attempt "to have the claims of the '541 Patent be construed so as to extend the full width of the bone with both medially positioned and laterally positioned guide surfaces used to resect the bone" (Red Br. 25) is belied by the fact that the Board found the Rejected Claims could be so read; yet, Hudson is not appealing that ruling.

## IV. THE BOARD ERRED IN DETERMINING THE ALLOWED CLAIMS REQUIRE A SINGLE GUIDE PLACED ON ONE SIDE OF THE KNEE FOR PERFORMING A COMPLETE RESECTION

### A. The Board erred in finding the Allowed Claims "describe a complete resection" – a construction Hudson does not address and the claims do not support.

In its Rehearing Decision, the Board was presented with an irreconcilable inconsistency between its original claim construction and the teachings of Samuelson. Biomet's Rehearing Request pointed out that the Board's initial claim construction, requiring cutting into both sides of the knee from a cutting guide on

one side, would be present in Samuelson. In particular, Biomet noted that with Samuelson's two sided cutting approach, a surgeon cutting from either side would not be able to stop at "exactly the midline of the knee" and thus necessarily would meet this claim limitation as some portion of each side would be cut (see figure below). A3505.




The Board's Rehearing Decision did not dispute this crossing the midline teaching but, instead, changed its claim construction to overcome Samuelson by construing all Allowed Claims "as referring to the resection of the bone and not just the specific portion [of the bone] being cut." A26. The Board then emphasized that "taking the claims at issue in context, it is not merely the fact that the surgeon's blade passes the midline of the bone, but that the entire resection is being

done using a guide on one side to complete the resection." *Id.* Further emphasizing how the new construction was central to its decision to reverse the Examiner's rejection, the Board stated:

> Even if part of the opposite side is cut into (but not in a manner that completes the resection) as argued by the Requester, the surgeon must still remove the blade and complete the resection using a different cutting guide. We think the claims at issue sufficiently convey that, in each instance, **the resection is completed by using a single cut guide** to cut from one side to the other. In other words, the Patent Owner's **claims describe a complete resection**, whereas the Requester's proposition that cutting into the other side falls within the scope of the claims only describes **a partial resection** that must then be completed using a different cutting guide, which **is not the same as what is claimed**. We think this distinction is made clear in each of dependent claims 31, 33, 39, 40, 45, 47, 53 and 54 and thus are persuaded that we should have also reversed the rejections of these claims for the same or similar reasons as we reversed the rejections of claims 35-38 and 49-52.

A26-27 (emphasis added).

Biomet appealed this "complete resection" claim construction ruling because it is wrong and its Opening Brief pointed out how none of the Allowed Claims used language supporting this construction. For example, the method of the Unamended Claims "create[s] at least one resected surface" and "further includes cutting a lateral side." Blue Br. 18-30 (claim 35). Similarly, the method of the Amended Claims "create[s] at least a portion of at least one resected surface" (*Id.* 30-38 (claim 31)) or "create[s] at least one resected surface" and "further includes cutting a contralateral compartment" (*Id.* 38-41 (claim 39)). None of this language

says a "complete resection" is performed.

Although Biomet's Opening Brief pointed out the Board's error, inexplicably Hudson's Response doesn't mention, much less support the Board's "complete resection" construction. As a result, Hudson apparently concedes the claims do not require a complete resection and thus acknowledges the Board's error in allowing these Claims to issue over the "partial resection across the midline" taught in the prior art.

### B. The Board erred in determining Unamended Claims 35-38 and 49-52 require cutting one side of the knee from a guide positioned on an opposite side

Noticeably absent from Hudson's Response is any detailed discussion of the claim language used to describe its invention. Instead of addressing the complicated and convoluted text of the Allowed Claims, Hudson, like the Board, has instead come up with a shorthand description that all of the claims cover "cutting across the knee from a guide positioned on an opposite side." Hudson's strategy relies on the legal fallacy that limitations of the "original base claims" can be ignored because the "dependent claims further limit the independent claims."

Yet, what is striking about the Board's construction, and Hudson's attempted defense of it, is that none of the Allowed Claims ever say that a cutting guide on one side is used to cut into the other side of the knee. This simple concept could have been expressed in the claims, but it wasn't. Instead, the Allowed

Claims are premised on positioning language that is imprecise (e.g., "generally adjacent at least a portion"), disjunctive (e.g., "at least one of the medial side or the lateral side") and vague (e.g., "generally medially") – all of which are saddled with guiding language that is equally imprecise (e.g., "guiding...by using the tibial cut guide"), disjunctive (e.g., "from at least one of the medial side or the lateral side of the knee") and vague (e.g., "further includes cutting a lateral side of the tibia").

#### 1. Hudson's arguments about "including at least" ignore claim terms in both the original and dependent claims

Biomet's Opening Brief identified two separate "positioning" limitations and two separate "guiding" limitations in the Unamended Claims. Hudson's Response basically says that the second limitation in each set, reflecting what the dependent claim added to the independent claim, is all that matters because of "the fundamental canon of claim construction that dependent claims further limit the independent claims from which they depend and must be individually evaluated for patentability." Red Br. 27. While this "canon" is certainly true, Hudson ignores an equally fundamental canon that "claims are interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). Thus, the first limitation in both the "positioning" and "guiding" steps, reflecting what is in the independent claim, cannot be ignored.

Accordingly, the "at least one of the medial side or the lateral side" language used to describe how both the "positioning" and "guiding" steps are performed

remain as claim limitations. As thoroughly explained in Biomet's Opening Brief (18-27), the Board was wrong to adopt a claim construction that "a single guide placed on one side or the other and used to cut into the other side" (A9). The Board ignored specific claim language that allowed the guide to be positioned, at least partially, on the lateral side, and ignored other claim language that allowed the cutting approach to be guided from either the medial or the lateral side.

Hudson's Response makes no effort to explain how the "at least one" language can be read as "only one." Hudson's Response also never mentions that it amended this identical language in independent Claim 13 to "only one" in order to avoid the "two sided" open-ended nature of the claim.[5] Hudson chose not to make a similar amendment to independent Claim 13 when dependent Claim 35 was rewritten in independent form and now can't contend that "at least one" means the same thing as "only one."

### 2. Hudson's arguments on "generally medially" and "both medially and laterally" misread the limitations added in the dependent claims

Instead of focusing on the claim language, which explicitly says the cutting guide can be positioned "generally adjacent at least a portion of an anterior side

[5] The Board rejected Amended Claim 13 since the "only one" amendment did not eliminate other open-ended claim language and thus properly found that "Patent Owner makes arguments that are not commensurate with the scope of these claims or the rejection made by the Examiner." A11. Hudson has not appealed that ruling.

and at least one of the medial side or the lateral side," Hudson relies exclusively on Figure 18 for its claim construction of "generally medially." This argument is flawed on three levels.

First, Figure 18 does not show a "generally medially" orientation as more of the "L" shaped cutting guide is on the anterior side than the medial side. The "generally anterior" Figure 18 offers no support for what a "generally medially" claim term means.

Similarly, the terms medial, lateral and anterior sides are not used in the specification to describe the positioning of Figure 18 so it is unclear where each side stops and the next side starts. Thus, the specification offers no insight into what "generally medially" means.

Finally, Hudson argues for the first time on appeal that Figure 18 shows a "medial portion of the anterior side" which can be included when determining what "generally medially" means. This new argument ignores the way claim is written. The claim requires a "portion of anterior side" and "one of medial or lateral side."[6] The claim does not say "a medial portion of an anterior side" as Hudson now argues. As explained in Biomet's Opening Brief (e.g., 21-22 and annotated figure), a cut guide can be located generally medially and still have some

[6] Hudson's consistent short-hand for the Unamended Claims as reciting a "cutting guide is positioned adjacent one side of bone" ignores the fact that the claims describe at least three sides – anterior, lateral and medial.

portion on the lateral side. Again, the claim language does not say "only medially" and thus allows this construction.

### C. The Board erred in determining Amended Claims 31, 33, 45, and 47 require cutting one side of knee from a guide positioned on an opposite side

Hudson makes the same basic argument for the Amended Claims that it did for the Unamended Claims – suggesting the limitations of the original base claims can be ignored because of the original dependent claim language. That is simply not the law as all claim language must be given meaning not just what is described in a dependent claim.

Hudson also makes the same fatal mistake for the Amended Claims by ignoring the Board's "complete resection" construction. Thus, Hudson once again concedes the Board's complete resection finding cannot be supported and thus acknowledges the Board had no basis to allow the claims over the "partial resection across the midline" teachings in Samuelson, Biomet and Protek.

#### 1. The open ended nature of the "slot" in the original independent claims is relevant to the location of the cut guide which can have other slots.

Hudson does not dispute Biomet's basic point that the cutting guide of these Amended Claims can have multiple slots. Hudson actually tried to amend base Claim 9 to make it claim "a **single** cutting guide with a **single** slot" but the Examiner refused to allow that amendment. Blue Br. 32.Thus the claim allows the cutting guide to have multiple slots.

Importantly, while these Amended Claims describe the claimed slot as facing "only one of a medial aspect or a lateral aspect," the claimed cutting guide is not similarly limited to facing only one aspect. As a result, a multi-slot cutting guide facing both the medial and lateral side, like Samuelson, is relevant prior art. As explained in the next section, a multi-slot cutting guide that uses one slot to cut only one side also meets the cutting step of Amended Claim 31.

#### 2. Biomet's arguments on "resected surface on both a medial portion or a lateral portion" match the contorted language of the dependent claims

Hudson's basic argument is that the "straightforward reading of this claim [requires] both a medial and a lateral portion of the bone to be cut with <u>a cutting guide positioned along only one of a medial or lateral side of the bone</u>." Red Br. 34 (emphasis added). Hudson then uses Figure 18 to support this construction.

The fundamental problem with Hudson's position is that Amended Claim 31 does not say <u>the cutting guide</u> is positioned on only one side – the claim describes it as "proximate an end of one of a femur or a tibia." Since the cutting guide is not limited in its position, it can be on both sides, as shown in Samuelson's annotated Figure 6A:



FIG-6A

As explained in Biomet's Opening Brief (32-36), Samuelson's disclosure of using the medial side slot 166 to cut the medial half of the knee satisfies the disjunctive (and confusing) claim language. Because the cutting guide can be positioned on both the medial and lateral sides, cutting the medial side from a medial side slot would "create the resected surface on both a medial portion...adjacent to the position of the cutting guide and a medial portion...opposite to the position of the cutting guide." A2829; Blue Br. 34.This construction is no more "nonsensical" than the way Hudson chose to claim its invention using open-ended and disjunctive terms that allow the cutting guide to be on both sides of the knee. If Hudson had wanted to claim "both sides of the bone to be cut from a guide on only one side" (Red Br. 35) it should have drafted these claims differently.

### D. The Board erred in determining Amended Claims 39, 40, 53, and 54 require cutting across the knee from a guide positioned on an opposite side

Biomet has previously explained how for these Amended Claims the femoral cut guide, located on "a portion of an anterior side" and "only one of a medial side or a lateral side," was used to guide a cutting tool having a saw blade:

1. "to create at least one resected surface…by guiding the long axis of the saw blade from the one of the medial side or the lateral side" and
2. "further includes cutting a contralateral compartment relative to one

of the medial side or the lateral side."

Blue Br. 38-41. Biomet demonstrated how these two different claim terms described two different cuts from two different directions. There are two cuts because the claim used the transitional phrase "further includes" to describe the second cut of the contralateral compartment. There are two directions since the contralateral cut is not limited to being made "from the one of the medial side or lateral side" like the first resected surface cut. Thus, the second cut could be made from the anterior side since the cutting guide is claimed as located on a "portion of an anterior side." Biomet also demonstrated how the Board was wrong to construe "at least one resected surface" and "cutting a contralateral compartment" to mean a "complete resection" was performed. *Id.* 40-41.

As with the other Allowed Claims, Hudson's Response Brief makes no effort to support the Board's erroneous "complete resection" construction for these Amended Claims. Instead, Hudson, inaccurately saying Biomet's "sole argument" is that two different cuts are made from two different directions, tries yet again to simplify these claims as requiring cutting one side of the bone from a cutting guide located on the other side. This one size fits all position again ignores what these Amended Claims say.

Hudson does not dispute that the claims are describing two different types of

cuts.[7] While Hudson disputes Biomet's two different directions argument, it does so by describing where the femoral cut guide is located without addressing the direction of the cutting approach in the claims. Hudson never explains why a femoral cut guide that is claimed as being positioned "along only a portion of an anterior side of the femur" cannot be used to perform an anterior side cut of a contralateral compartment.

Thus, Hudson concedes that the first cut creates a "resected surface" with the saw blade moving in a medial to lateral direction. Hudson also concedes that the second cut is "cutting a contralateral compartment" but can be from an anterior direction since the femoral cut guide is located there.

## V. THE PRIOR ART DISCLOSES A SINGLE CUT GUIDE PLACED ON ONE SIDE OF THE KNEE FOR PERFORMING A COMPLETE RESECTION OR FOR CUTTING ACROSS THE MIDLINE

Biomet's Opening Brief explained how Samuelson, Protek, and Biomet each disclose a one-sided cutting approach in which a cut guide is placed on one of the medial or lateral sides of the knee and used to perform a complete resection of the knee. But even if this Court disagrees and finds the prior art teaches a two-sided

[7] Creating a "resected surface" is a different type of surgical process than simply "cutting a contralateral compartment." The former creates a flat surface, and the claim says the femoral implant is positioned "generally adjacent the at least one resected surface." The latter describes a cut of an unspecified size and shape. Moreover, the claim does not say that the femoral implant is positioned adjacent to the cut on the contralateral compartment.

cutting approach from both the medial and lateral sides of the knee, that surgical method would necessarily result in a cut across the midline and into the other side, thus still reading on the Allowed Claims.

Continuing the theme of avoiding its chosen claim language, Hudson's only arguments to overcome the prior art are directed at limitations not actually recited in the claims. For example, Hudson argues "none of the cited references...teach cutting across the femur or the tibia from one of the medial or lateral sides of the bone to the opposite lateral or medial side of the bone" – a limitation not recited in any Allowed Claim. Red Br. 37. In contrast, Biomet has expressly pointed out where the prior art disclosed each of the contested limitations in the Allowed Claims. *See generally* Blue Br. 42-55.

### A. The Board's finding that Samuelson only taught a two-sided surgical approach is not supported by substantial evidence as Samuelson teaches a complete resection from one side

Biomet explained how Samuelson's specification expressly discloses a complete resection through the slot on one side of a cutting guide. *See* Blue Br. 57-58 (citing A2185 ("the surgeon resects the distal end of the femur 26 by using a bone saw (not shown) through the slot 200")). Although Hudson never addresses it, Biomet showed how Claim 10 of Samuelson also claimed a complete resection by describing "a method for resecting a bone" (A2187) of a knee using a single "laterally extending" arm of the cut guide for "resecting the bone." *Id*. at 58 (citing

A2187). Thus, Samuelson contains multiple disclosures of a one-sided complete resection surgical method.

Hudson incorrectly asserts that "Samuelson expressly states that...both sides are used identically in the respective procedures." Red Br. 38. Hudson mischaracterizes what Samuelson "expressly" discloses, without quoting the reference itself, and avoids addressing Biomet's lengthy explanation of how the Board erroneously limited Samuelson to only a two-sided surgical method. Blue Br. 58-60. Samuelson's description of the symmetrical nature of the cutting guide does not allow Hudson or the Board to ignore the asymmetrical surgical approach described as "the surgeon positions a bone saw blade in the space 370 formed between the swing arms 334 and 360 and resects the proximal end of the tibia." A2187.

### B. The Board's finding that even Samuelson's two-sided surgical approach taught cutting across the midline is supported by substantial evidence, but its ultimate decision to allow the claims is not

Even if Samuelson taught cutting from both the medial and lateral sides, this two-sided method would necessarily include a cut from a cut guide on one side of the knee that would cross the midline into the other side. The Board acknowledged Samuelson necessarily taught crossing the midline and was required to craft the new "complete resection" claim construction position to overcome it. Blue Br. 43-

44. Since Hudson is not supporting the complete resection construction,[8] it cannot overcome Samuelson's crossing the midline teaching.

Instead of denying that a two-sided cutting approach would necessarily include a cut across the midline, Hudson now argues, for the first time on appeal, that Samuelson actually requires three cutting approaches. Without any record citation, Hudson argues that "in reality" Samuelson discloses a medial cut "from the medial and anteromedial portions of the guide," a lateral cut "from the lateral and anterolateral portion of the guide," and "if any central portion of the bone is left uncut" the guide is removed so that the surgeon can perform a "freehand" cut without a guide. Red Br. 40. Hudson's three-part cutting approach argument was not a finding made by the Board and cannot be supported by any disclosure in Samuelson. Further, Hudson's new theory that "if any central portion of the bone is left uncut..." implies that – at least sometimes – the two-sided cutting approach results in a complete resection. Hudson never explains, however, how a surgeon making two cuts from two sides could cut up to but not over the midline.

### C. The Board's finding that there is no teaching in Protek of cutting across the femur or tibia from one side to the other is not supported by substantial evidence

[8] *See* Red Br. 4 ("Each of the Allowed Claims requires a specific cutting guide, placed on one side of the bone, to be used to *cut into the other side* of the bone.") (emphasis added).

Biomet explained how Protek discloses a complete resection using a cut guide on only one side. Blue Br. 53. Hudson confusingly responds that the "more conveniently positioned laterally located portions of the anteriorally positioned cutting block and undeployed lateral arm" are actually used. Red Br. 42. Hudson's proposition that the "undeployed lateral arm" is used is expressly contradicted by Protek, which states that "it is not possible to use the cutting guide arm on the lateral side." A2307. Moreover, as shown in the Protek figure below, an alignment guide sits directly in the middle of the "anteriorly positioned cutting block," which would limit use of the anterior block during resection. Thus, Hudson cannot cite "substantial evidence" to support the Board's decision.

**Step 5: Resection of the Proximal Tibia.**



Additionally, as with Samuelson, even if Hudson is correct that Protek's method of resection requires cuts from the medial and lateral sides, even in a two-sided cutting approach a surgeon would necessarily cross the midline of the knee, thus reading on the Allowed Claims. Blue Br. 53.

### D. The Board's finding that there is no teaching in Biomet of cutting across the femur or tibia from one side to the other is not supported by substantial evidence

Biomet explained how the Biomet reference also discloses a complete resection using only a one-sided cut guide. Blue Br. 54. As with Protek, Hudson's argument that the "more conveniently positioned" anterior and lateral portions of the cut guide are used is directly contradicted by the teachings of Biomet. *See* Biomet (A2208) ("it is not possible to use the cutting guide arm on the lateral side") (figures 18-19 show alignment guide on anterior side). Further, Biomet Figure 19 illustrates the saw blade approaching the knee from only the side with the deployed cutting guide arm, e.g., the medial side – not from the lateral side as Hudson suggests:



Figure 19

*Id*. Thus, neither the Board's finding nor Hudson's newly-suggested approach are supported by substantial evidence.

Additionally, as with Protek, even Hudson's newly suggested approach involving cuts from both sides would necessarily include a cut across the midline of the knee and into the other side. Blue Br. 54-55.

### E. The Allowed Claims are obvious over Samuelson and Protek

Hudson's only argument that the Allowed Claims are not obvious over Samuelson and Protek relies on the faulty premise that neither Samuelson nor Protek teach or suggest a one-sided cutting approach. Red Br. 44-45. As discussed above, both Samuelson and Protek expressly disclose a one-sided cutting approach. Thus, the combination of these references renders the Allowed Claims obvious. Blue Br. 60.

## VI. HUDSON'S ARGUMENTS REQUESTING ISSUANCE OF AMENDED CLAIMS IS BOTH PREMATURE AND INCORRECT

If this Court affirms the Board's allowance of Amended Claims 31, 33, 39-40, 45, 47, 53, and 54, Hudson asserts that "this Court should direct the USPTO to enter the amendments" in a reexamination certificate. Red Br. 45. Hudson understandably fears that after the '541 Patent expires the USPTO will not issue the Amended Claims because they violate the "no amendment" rule of 37 C.F.R. § 1.530(j). While Hudson's fears are well founded, the patent has not yet expired and the USPTO has not yet determined whether the Amended Claims will issue – so Hudson's request is premature.

If this Court's opinion issues after the expiration of the Patent on December 24, 2015, however, the Court should dismiss the appeal of the Amended Claims as moot since they have altered claim scope and cannot issue under 37 C.F.R. § 1.530(j).

### A. Until the USPTO issues the reexamination certificate, it is premature for this Court to decide whether Amended Claims should issue

As a matter of appellate jurisdiction, until the USPTO has had the opportunity to rule on whether the issuance of the Amended Claims would violate the "no amendment" rule under 37 C.F.R. § 1.530(j), it is improper for Hudson to ask this Court to order the USPTO to do so. 35 U.S.C. § 141 gives parties to an *inter partes* reexamination the right to appeal to this Court "the final decision in an appeal to the [Board]." Because the USPTO has not yet ruled on whether the Amended Claims will issue, there is no Board decision for this Court to review and Hudson's request is premature. *Fleming v. Coward*, 534 Fed. App'x 947, 950 (Fed. Cir. 2013) ("[T]he prerequisite to requesting judicial review [under 35 U.S.C. § 141] is the exhaustion of remedies before the PTO by procuring a 'decision from the Board' or 'final agency action.'").

### B. If the Court's decision issues after December 24, 2015, the appeal of the Amended Claims should be dismissed as moot

Hudson has admitted that "the PTO cannot issue amended claims for an expired patent if the amendments change the claim's scope." *Institut Pasteur v. Focarino*, 738 F.3d 1337, 1339 (Fed. Cir. 2013) (citing 37 C.F.R. § 1.530(j), (k)). This Court's precedent recognizes that if its decision issues after expiration of the '541 Patent the Court should dismiss the appeal of the Amended Claims as moot. *Id*. at 1343 ("We conclude, contrary to [the Patent Owner's] contention, that the

amendments it proposed during reexamination...did substantively narrow claim 1 and dependent claim 14. It follows that there is no live controversy over the Board's rejection of amended claim 14: even if the Board erred, the claim cannot issue.").

In an attempt to overcome the cited prior art during reexamination, Hudson made narrowing amendments to each of the independent claims and several of the intervening dependent claims from which the Amended Claims depend. Hudson's various attempts to argue that these amendments are not "amendments" under 37 C.F.R. § 1.530(j) all fail.

Hudson first alleges that the amendments to the Amended Claims "did not change the scope of the claims." Red Br. 46. However, even a cursory review of the Amended Claims reveals that the amendments changed the open-ended nature of several claim terms to overcome prior art and thereby materially altered their scope. *See*, *e.g.*, A3266-67 (Claim 9 reciting "...the slot facing the end of the one of the femur or the tibia from <u>only</u> one of a medial aspect of a lateral aspect <u>with no other portion of the slot positioned along the other of the medial aspect or lateral aspect</u>...") (underlining reflects language added by amendment). Hudson made extensive arguments about how the amendments avoided the prior art two-sided cutting approach by trying to limit the claims to a one-sided cutting approach. *See* A2732-42.

Further, contrary to Hudson's assertion, the amendments did not "comport the claims with the proper legal constructions of the claims in view of the prosecution history." *See* Red Br. 46. As discussed above in Section III(A), *supra*, Hudson's claim construction arguments based on the Bert reference did not result in the disavowal of claim scope, under the *Phillips* standard. Thus, when Hudson included narrowing amendments to the claims during reexamination, it was not just making the claim language match what it had earlier said about Bert, but was altering the scope of those claims, such that they cannot issue after expiration of the '541 Patent.

Finally and inexplicably, Hudson next argues that even if the amendments changed the scope of the original base claims from which the Amended Claims depend, the Amended Claims should still issue with the "original independent base claim language." Red Br. 47-48. Hudson's purported justification is that "those claims were allowed by virtue of the original language of those dependent claims, without regard to the language of the underlying base claims." *Id.* at 47. Hudson's argument that the "dependent claims define allowable subject matter" and since they were not amended it doesn't matter whether the independent claims from which they depend were amended defies logic and the law. Hudson sought allowance of the Amended Claims during reexamination based on numerous amendments made to the original independent claims. There is no legal basis

allowing Hudson on appeal to change its mind and contend it is entitled to claims based on the unamended original independent claims.

In conclusion, 37 C.F.R. § 1.530 provides that <u>*no amended claim*</u> can issue after expiration of a patent. During reexamination, the scope of Hudson's Amended Claims substantively changed. If this Court's decision issues after December 24, 2015, the appeal of the Amended Claims should be dismissed as moot.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Biomet requests that this Court reverse the Board's claim constructions for Claims 31, 33, 35-40, 45, 47, and 49-54 and reverse the Board's decision finding that those claims are valid.

Dated: July 20, 2015

Respectfully submitted,

*/s/ Douglas D. Salyers*

Douglas D. Salyers
Paul E. McGowan
Dustin B. Weeks
TROUTMAN SANDERS LLP
600 Peachtree Street, NE
Suite 5200
Atlanta, GA 30308-2216
(404) 885-3000

*Counsel for Appellants*

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing Reply Brief of Appellant to be served on counsel of record on July 20, 2015, by e-mail at the following address:

Brad D. Pedersen
pedersen@ptslaw.com

Chad Wickman
wickman@ptslaw.com

Douglas D. Salyers
Name of Counsel

*/s/ Douglas D. Salyers*
Signature of Counsel

TROUTMAN SANDERS LLP
600 Peachtree Street
Suite 5200
Atlanta, GA 30308
Tel.: (404) 885-3000
Fax.: (404) 885-3900
Email: doug.salyers@troutmansanders.com

## CERTIFICATE OF COMPLIANCE

Appellants Biomet Orthopedics, LLC and Biomet Manufacturing Corporation certify the following:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). Specifically, this brief contains 6,925 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). Specifically, this brief has been prepared in a proportionally spaced typeface using MS Word 2007 in a 14 point Times New Roman font.

| | |
|---|---|
| Douglas D. Salyers | */s/ Douglas D. Salyers* |
| Name of Counsel | Signature of Counsel |

TROUTMAN SANDERS LLP
600 Peachtree Street
Suite 5200
Atlanta, GA 30308
Tel.: (404) 885-3000
Fax.: (404) 885-3900
Email: doug.salyers@troutmansanders.com